IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-08-260 |
| | § | CIVIL ACTION NO.  H-09-2758 |
| JORGE ALBERTO RUIZ-IRIAS, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28

U.S.C. § 2255 is Movant Jorge Alberto Ruiz-Irias' § 2255 Motion to Vacate, Set Aside or

Correct Sentence (Document No. 39-1)[1], and Motion to Appoint Counsel (Document No. 39-

2), and the United States' Response (Document No. 45-1) and Motion to Supplement the

Record (Document No. 45-2).  After reviewing the parties' submissions, the record of the

proceedings before the District Court in the underlying criminal case, and the applicable case law,

the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant's § 2255

Motion to Vacate, Set Aside, or Correct Sentence (Document No. 39-1) be DENIED, and that

this § 2255 proceeding be dismissed.

## I.    Procedural History

Movant Jorge Alberto Ruiz-Irias ("Ruiz-Irias"), who is currently in the custody of the

United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255.

---

[1] Jorge Alberto Ruiz-Irias' Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-09-2758 and at Document No. 39 in Criminal Action No. H-08-260.  References hereafter will be to the Criminal Document numbers unless otherwise indicated.

This is Ruiz-Irias' first attempt at § 2255 relief.

On March 7, 2008, Ruiz-Irias was arrested by the Rosenberg Police Department in Fort Bend County, Texas and charged in state court with unlawful possession of a firearm, theft of a firearm, and failure to identify. Thereafter, on April 30, 2008, he was charged by Indictment with illegal reentry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(1). (Document No. 1). Ruiz-Irias was in state custody at the time he was charged by Indictment in federal court. An Application for Writ of Habeas Corpus ad Prosequendum was issued on April 30, 2008, directing that Ruiz-Irias be borrowed from state custody and placed into federal custody on May 6, 2008, for his Initial Appearance, and subsequent federal court proceedings. (Document No. 3). On May 16, 2008, Ruiz-Irias pleaded guilty, without a written plea agreement. (Document No. 18, Transcript of Rearraignment, Document No. 40). At Ruiz-Irias' May 16, 2008, Rearraignment, the Court engaged in an extended colloquy with Ruiz-Irias to ensure that his plea was knowing and voluntary. The Court advised him of the consequences of his plea, including the maximum sentence he faced (up to ten years), the manner in which his sentence would be calculated, the right to appeal, the rights he was waiving, and the elements of the offense. (Transcript of Rearraignment, Document No. 40, pp. 10-19). With respect to what the Government would have proved had the case proceeded the trial, the Government stated:

> Mr. Stabe: Regarding Mr. Ruiz, your Honor, the Government will show that he is a citizen of Honduras; that on July 26, 2005, this man was convicted in the 185th District Court of Harris County, Texas for the felony offense of possession of cocaine and was sentenced to six months confinement.
>
> That on March 2nd, 2006, defendant pled guilty and was convicted in the District Court of Oklahoma County, Oklahoma to felony offenses of grand larceny, use of an electronic device in a felony and conspiracy to commit a felony. And that case sentencing was deferred for a period of five years.

On May 23, 2006, the defendant was deported from the United States to Honduras from Dallas, Texas.

On May 11, 2007, the defendant was found in the United States and once again deported to Honduras from Houston, Texas.

On June 5, 2007, the defendant was convicted in the United States District Court, Southern District of Texas, McAllen, for the misdemeanor offense of illegal entry and sentenced to 45 days confinement.

And on August 20, 2007, defendant was again deported from the United States to Honduras, and he was found again on March 10, 2008, here in the United States in Fort Bend County, Texas.

And a search of the Central Index System and defendant's A-file revealed no evidence that the defendant obtained consent from either the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission to the United States.

A fingerprint analyst examined and compared the fingerprints on the warrant of deportation and the conviction documents with the known fingerprints of the defendant and concluded they were made by the same individual.

The Court: Mr. Ruiz, tell me in your own words what it is you did to commit the crime you are pleading guilty to this morning.

Defendant Ruiz-Irias: I was deported to Honduras, and I came back to this country without permission.

The Court: Pretty much what Mr. Stabe just recited to us?

Defendant Ruiz-Irias: Yes. (Transcript of Rearraignment Hearing, Document No. 40, pp. 19-21).

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared.

(Document No. 22). Pursuant to the PSR, Ruiz-Irias' advisory guideline sentencing range was calculated as follows: (1) Ruiz-Irias had a base offense level of 8. (2) Because Ruiz-Irias had a prior felony drug offense, under U.S.S.G. § 2L1.2(b)(1)(D), his offense level was increased by 4 levels to level 12. (3) Because Ruiz-Irias accepted responsibility pursuant to U.S.S.G.

3

§ 3E1.1(a), his offense level was reduced by two levels.  (4) With an adjusted offense level of 10,

and with a criminal history category of III, Ruiz-Irias had an advisory guideline range of

imprisonment of 10 to 16 months.  With respect to pending state charges, the PSR stated there

were no pending charges.  (Document No.  22, ¶ 36).[2]

---

[2] As to the specifics of the state charges Ruiz-Irias had been charged with on March 7, 2008, unlawful possession of a firearm, theft of a firearm and failure to identify, the PSR states that the charges were "Dismissed, the defendant was charged federally."  With respect to his arrest by the Rosenberg Police Department, the PSR states:

On March 7, 2008, a Rosenberg police officer, while conducting patrol at the Cottonwood Travel Plaza, located at 2801, U.S. Highway 59, in Rosenberg, Texas, encountered the defendant, later identified as George Louis, with a date of birth of 12/24/1979.  The defendant was with two other males inside a parked Ford pickup truck.  As the police officer drove past the pickup truck, the police officer noticed that the pickup truck had no front license plate and that the defendant along with the other males, began to make suspicious movements inside the pickup truck.  The police officer parked his police car and began to approach the pickup truck.  While approaching the driver's side window of the pickup truck, the police officer noticed the rear passenger (the defendant) lay down and begin reaching down under his seat.  The police officer began an interview with the driver of the vehicle.  The driver of the pickup truck told the police officer that the truck belonged to him and that the other males in the pickup truck were his friends.  The driver of the pickup told the police officer that he and his friends were at the plaza to help his brother fix a flat tire.  As the police officer interviewed the driver of the pickup truck, the police observed the front seat passenger reach down towards the floorboard and quickly hand a dark object to the rear passenger (the defendant).

The police officer ordered the defendant and the two subjects out of the pickup truck.  The police officer instructed the defendant and the other two subjects to present identification.  All three subjects provided the police officer with Mexican identification cards.  The police officer instructed the defendant and the two males to place their hands on the patrol car, at which time additional police officers arrived. Jesus Gonzalez gave police officers consent to search the pickup truck. As a result of the search, police officers discovered three handguns (A Taurus, .357 magnum, serial number KH482461, a Glock, model 27, .40 caliber, serial number HSC070 and a Byrco Arms, Jennings Nine, .9mm, serial number 1579280) in the pickup truck.  All the firearms were loaded.  The defendant and two individuals were arrested and placed into separate patrol cars.  Police officers later

4

The docket sheet reveals that both the Government and Ruiz-Irias filed written objections to the PSR.  (Document Nos.  20 and 21).[3]  On August 22, 2008, Ruiz-Irias was sentenced to a term of imprisonment of 16 months, to be followed by a 3 year term of supervised, and a $100 special assessment.  His fine was waived.  (Document No.  25, Transcript of Sentencing, Document No.

---

determined that the Glock pistol was stolen, based on a NCIC records check. According to the offense report, a further search of the pickup truck revealed a ski mask and several boost mobile phones, which according to the police officers are used by drug/money traffickers as a method of communication that is less detectable for police officers.  (Document No.  22, ¶ 37, p.  8-9).

[3] Ruiz-Irias objected to PSR ¶ 63 as follows:

As reflected in the PSR, Mr.  Ruiz-Irias was originally arrested by Fort Bend County deputies on March 7, 2008.  He was unable to make bond due to an ICE hold on him.  After he was taken into federal custody on May 6, 2008, the state charges were dismissed.

Title 18, United States Code, Section 3583(b)(2), provides that a "defendant shall be given credit toward service of a term of imprisonment for time spent in official detention prior to the date the sentence commences ... as a result of any other charge for which the defendant was arrested after commission of the offense for which the sentence was imposed that has not been credited against another sentence."  Because the state charges were dismissed in this case, Mr.  Ruiz-Irias has not received credit for that time.  Alternatively, this Court has the authority to reduce the sentence to reflect this uncredited time.  *United States v.  Barrera-Saucedo*, 385 F.3d 533 (5th Cir.  2004).

Sentencing Recommendation
Mr.  Ruiz-Irias grew up in Honduras without a father, a man he did not even meet until he was ten years old.  He grew up in poverty and had to begin working when he was just eight years old.  Confronted with this life of poverty, he made the journey north in hope of making enough money to support his family, including his two young children in Honduras.

Mr.  Ruiz-Irias respectfully submits that the advisory guideline range, reduced by the two months spent in state custody, is sufficient but no greater than necessary to meet the purposes of punishment.  *See* 18 U.S.C. §3553(a).  Therefore, he asks the Court to impose a sentence of eight months.  (Document No.  20, p.  3-4).

35, pp. 6-7).  Prior to sentencing, counsel for Ruiz-Irias argued for the imposition of the minimum

sentence allowed under the law.  In particular, counsel argued:

> Ms.  Meyers: Your Honor, I'd ask the Court to impose the minimum sentence
> permitted by law.  As set out in my federal sentencing recommendation at the end
> of my objections, Mr.  Ruiz-Irias grew up in poverty.  Like so many people who
> come here, he came here to find work.  And his guidelines are 10 to 16 months.
> He spent two months in state jail.  And the court can either— I've asked that the
> Court reduce the sentence by two months to reflect the time that he's not getting
> credit by anybody.  The alternative is to leave that to the Bureau of Prisons.  And
> the Bureau of Prisons should give him credit under the statute, but I guess I don't
> trust the Bureau of Prisons as much.  So, I am asking that it is time that he spent
> incarcerated.  It is not credited to service of any other sentence.  So, I'd ask for a
> sentence of 8 to 10 months, your Honor.

> The Court: All right.  Mr.  Stabe.

> Mr.  Stabe: Your Honor, I'm going to ask the Court to assess 16 months, the
> upper end of the guideline range.  While — like many defendants and aliens that
> come to the United States seeking work, you know, the defendant has two prior
> felony convictions, has an illegal reentry, and the Court should and can take into
> consideration what the offense that the defendant was arrested on March 15 of
> 2008 that brought him to the attention of the Government again on this — that
> form the basis of this case.

> In paragraph 37, the defendant was detained and arrested by Rosenberg police
> officers.  He was with two other defendants or two other individuals.  There are
> three weapons in the vehicle.  Weapons were — some the weapons were where
> the defendant was seated at the back of the car.

> They were parked in an area parking, that obviously, led the officer to believe that
> they were going to be involved in some criminal activity.  I think the facts speak–
> the fact that they were going to be involved in some criminal activity.  So, again,
> looking at the defendant's totality of the circumstance, 3553(a) factors, as far as
> deterrence and rehabilitation and punishment, 16 months is appropriate.

> The Court: All right.  Mr.  Ruiz-Irias, anything you'd like to say before I
> pronounce sentence?

> The Defendant: Yes. I want to ask for forgiveness for having entered this country
> illegally.  I'm very remorseful for having entered without permission.  I want to
> return to my country, have a life there, and never return here again.  This is all I

have to tell you.  (Transcript of Sentencing Hearing, Document No. 35, pp. 3-5).

Ruiz-Irias was sentenced to a 16 month term of imprisonment.  In rejecting counsel's request that

Ruiz-Irias be sentenced at the low end of the advisory guideline range, Judge Harmon stated:

> All right.  Jorge Alberto Ruiz-Irias comes before the Court after pleading guilty to the charge of illegal reentry after deportation.  The defendant has been convicted of possession of cocaine, grand larceny, use of an electronic device while in the commission of a felony, conspiracy to commit a felony, and illegal reentry after deportation.  He's been deported three times.
>
> Based on his criminal history and the number of deportations, I believe that a sentence at the high end of the guideline range in appropriate.  The sentence is adequate in meeting the sentencing objectives pursuant to 18 United States Code, Section 3553(a), which instruct the Court to impose a sentence sufficient but not greater than necessary when considering the nature and circumstances of the offenses and the history and characteristics of the defendant.
>
> Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Jorge Alberto Ruiz-Irias, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 16 months.  (Transcript of Sentencing Hearing, Document No. 35, pp. 5-6).

Judgment was entered on August 28, 2008. (Document No. 28).  Ruiz-Irias was thereafter

returned to state custody on or about September 10, 2008.  Ruiz-Irias did not appeal his

conviction.  As such, his judgment and conviction became final 10 days later, on or about

September 7, 2008.

Even though the PSR indicated that there were no pending state charges, that was not the

case.  On April 3, 2009, Ruiz-Irias pleaded guilty to unlawful possession of a firearm by a felon

and was sentenced to two years imprisonment in the Texas Department of Corrections.  Ruiz-

Irias' state sentence was credited with the 393 days he was detained from his arrest on March 7,

2008, through the date he pleaded guilty.  On July 3, 2009, Ruiz-Irias was paroled by the state

and placed in federal custody to begin service of his federal sentence.  Ruiz-Irias' projected

release date is August 31, 2010.  On August 26, 2009, within one year of his conviction being

final, Ruiz-Irias timely filed a § 2255 Motion to Vacate, Set Aside, or Correct Sentence

(Document No.  39).

        In his § 2255 motion, Ruiz-Irias contends that he is being held in custody in violation of

his constitutional rights.  According to Ruiz-Irias, when he pleaded guilty in the instant federal

action, he believed that the federal sentence was all the prison time he faced when, in fact, there

was a pending state charge.  Ruiz-Irias claims that had he known of the outstanding state charge,

he would have tried to resolve the state charge prior to pleading guilty and, in connection, would

have asked Judge Harmon to order his federal sentence to run concurrent to his state sentence.

He also claims he would have attempted to get the state court to run his state sentence concurrent

to his federal sentence.  Simply put, Ruiz-Irias would have requested that his federal and state

sentences run concurrent, which would have shortened his imprisonment.  Ruiz-Irias, relying on

*United States v.  Tobias*, 662 F.2d 381, 388 (5th Cir.  1981), argues he has been deprived of his

Fifth Amendment right to due process of law because Judge Harmon imposed a sentence based on

material misinformation in the erroneous PSR.  In addition, Ruiz-Irias alleges that he has been

deprived of due process because he was not returned by the United States Marshal to Fort Bend

County, Texas immediately after completion of the federal proceedings as ordered by the Court.

Finally, Ruiz-Irias raises a claim of ineffective assistance of counsel.  According to Ruiz-Irias,

counsel could have and should have independently verified the information in the PSR, the

investigation of which would have revealed the pending state charge.  Ruiz-Irias argues that had

this investigation taken place, counsel would have known that he had a pending state charge, and,

8

and at this juncture, Ruiz-Irias had several options including but not limited to resolving the state proceedings before he was sentenced by Judge Harmon and then asking Judge Harmon to order his federal sentence to run concurrent to the state sentence or requesting the state judge to order his state sentence concurrent to his federal sentence.  As to relief being sought through his § 2255 motion, Ruiz-Irias requests that his § 2255 motion be granted, that his sentence be vacated and that he be re-sentenced.

The Government, in response, argues that because Ruiz-Irias, with the exception of his ineffectiveness of counsel claim, did not raise his claims on direct appeal, his claims are procedurally barred, and further argues that he has not shown cause or prejudice to overcome the procedural bar.  The Government maintains that even assuming Ruiz-Irias could overcome the procedural bar, his claims are without merit.  With respect to Ruiz-Irias' contention that his sentence was based on misinformation of a constitutional magnitude, the Government counters that the misinformation at issue in the instant action does not rise to the level that warrants the relief requested by Ruiz-Irias, namely, that his sentence be vacated and that he be re-sentenced, because the information was neither materially false or unreliable and did not serve as the basis of his sentence.  The Government argues that Ruiz-Irias has failed to demonstrate a constitutional deprivation because he had no constitutional right to concurrent sentences.  In addition, the Government counters that Ruiz-Irias was credited by state authorities for all the time he spent in custody prior to his state sentencing so he cannot show he was prejudiced by the failure of the U.S. Marshals to return him to state custody following his sentencing.  As to Ruiz-Irias' contention that he was denied effective assistance of counsel because counsel failed to investigate the state charges, the Government argues that Ruiz-Irias has not shown that counsel performed

9

unreasonably by relying on a factual finding in the PSR, and that he cannot show he was prejudiced by counsel's alleged failure to investigate.

The Government moves to supplement the record with records from the Bureau of Prisons that are relevant to the claims raised herein by Ruiz-Irias. Having reviewed the records, the undersigned finds the records relate to the claims raised by Movant, and orders that the record be supplemented to include records from the Bureau of Prisons concerning Ruiz-Irias' sentence computation data and his inmate profile. The records confirm that Ruiz-Irias was arrested by the Rosenberg, Texas Police Department on March 7, 2008, and charged with unlawful possession of a firearm, theft of a firearm and failure to identify. Ruiz-Irias was charged by federal Indictment on April 30, 2008. Because Texas had primary jurisdiction, he was borrowed from state custody pursuant to a writ on May 6, 2008. He was sentenced in federal court on August 22, 2008. His federal judgment was entered on August 28, 2008. The records show that he was returned to state custody on or about September 2008. On April 3, 2009, Ruiz-Irias pleaded guilty to unlawful possession of a firearm by a felon in state court and was sentenced to two years imprisonment in the Texas Department of Corrections. The records show that his state sentence was credited for 393 days or the time from the date of his initial arrest on March 7, 2008, until April 9, 2009, the date he was sentenced. Ruiz-Irias was paroled by the State of Texas on or about July 3, 2009, and was placed in federal custody to begin service of his federal sentence on or about July 7, 2009. He has a projected release date of August 31, 2010.

With respect to Ruiz-Irias' contention that he is being held in custody in violation of his constitutional rights because when he pleaded guilty, he did so believing that all he faced were federal charges and that there were no pending state charges, Ruiz-Irias relies on the PSR, which

10

states that there were no pending state charges.   It is undisputed that PSR ¶ 36 and 37 states that

there were no pending state charges.  This was erroneous.  Ruiz-Irias maintains that had he

known of the state charges, he would have explored other options such as resolving the state

charges before he pleaded guilty to the federal charges so that he would have been able to ask that

his federal sentence run concurrent to his state sentence, and thereby would have shortened his

sentencing exposure.  According to Ruiz-Irias, the misinformation in the PSR was "material

misinformation" that was relied upon by the parties and the Court to his detriment.  He further

argues that he should have been returned to Fort Bend County, Texas, immediately following his

sentencing by Judge Harmon.  According to Ruiz-Irias, because his sentences have run

consecutive he has served a longer prison time than he anticipated when he pleaded guilty to the

federal charges.

Upon this record, Ruiz-Irias has not shown he is entitled to relief on his claims.  With

respect to his constitutional deprivation claims, while he has shown that the information in PSR ¶

36 and 37 was clearly not true, he has not shown that this erroneous information had an impact on

his sentence, such that it rose to a level of a deprivation of a constitutional magnitude.      To the

extent Ruiz-Irias argues that his due process rights were violated because he was sentenced, in

part, on inaccurate information, the type of information that was false, namely, the dismissal of

state charges, had no actual impact on the calculation of his advisory guideline sentencing range

and as a result, the error was not analogous to the situations where courts have found a

constitutional violation.

The law is clear that sentences based upon erroneous and material information or

assumptions violate due process.  *Townsend v.  Burke*, 334 U.S. 736, 740 (1948) (sentence based

11

upon "assumptions concerning [the defendant's] criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law...."); *United States v. Tucker*, 404 U.S. 443, 447-48 (1972) (affirming circuit court's remand for resentencing because original sentence was predicated on inaccurate information); *Roberts v. United States*, 445 U.S. 552, 556 (1980) ("We have ... sustained due process objections to sentences imposed on the basis of 'misinformation of constitutional magnitude'"); *United States v. Tobias*, 662 F.2d at 388 ("Sentences based upon erroneous and material information ... violate due process."), *cert. denied*, 457 U.S. 1108 (1982); *United States v. Jones*, 640 F.2d 284, 286 (10th Cir. 1981)("[Supreme Court] cases recognize a due process right to be sentenced only on information which is accurate."). "Where a defendant claims that his due process rights have been violated by the sentencing court's reliance on false or unreliable information, he must make a showing of two elements: (1) that the challenged evidence is materially false or unreliable, and (2) that it actually served as the basis for the sentence." *United States v. Reme,* 738 F.2d 1156, 1167 (11th Cir. 1984); *United States v. Rone*, 743 F.2d 1169, 1171 (7th Cir. 1984); *Jones v. United States*, 783 F.2d 1477, 1480 (9th Cir. 1986); *United States v. Eakman*, 378 F.3d 294, 298 (3rd Cir. 2004). Ruiz-Irias has not shown that the misinformation in the PSR served as the basis for his 16 month sentence. Ruiz-Irias had an adjusted offense level of 10, a criminal history category of III, and an advisory guideline sentencing range of 10 to 16 months. He was sentenced to the high end of the advisory guideline range based on his extensive criminal history and recidivism. If the parties had been aware of the state charge, and Ruiz-Irias had requested either judge to order concurrent sentences, it is speculative as to whether his request would have been granted. In fact, Judge Harmon denied Ruiz-Irias' request to sentence him to the low end of the advisory guideline

range and opted instead to sentence him to the high end of the advisory guideline range in light of his criminal history.  While it is possible that Judge Harmon might have run the sentences concurrent, it is just as possible that she would have denied this request.  A possibility of a particular result does not establish that a particular result will happen.  The error in the PSR had no impact on the calculation of the sentence.  The impact was limited to whether Ruiz-Irais' sentences would be served consecutive or concurrent.   Because the alleged error had no impact on the calculation of his advisory guideline sentence, Ruiz-Irias has not shown a violation of his constitutional rights based on this misinformation.

Moreover, to the extent that Ruiz-Irias argues that he could have resolved the pending state charges before he pleaded guilty to the federal charges and requested the state judge to run his state sentence concurrent to his federal sentence, the law is clear, that "federal courts consider 'concurrent sentences imposed by state judges [to be] nothing more than recommendations to federal officials.'" *Leal v. Tombone*, 341 F.3d 427, 429 n.13 (5th Cir.  2003).  "The federal court is 'free to turn those concurrent sentences into consecutive sentences by refusing to accept the [state] prisoner until completion of the state sentence." *Id.[4]*   To the extent Ruiz-Irias claims that

---

[4] The Fifth Circuit in *United States v.  Cibrian*, No.  09-40048, 2010 WL1141676 (5th Cir. March 24, 2010) addressed the interplay between federal and state sentences and the concept of primary jurisdiction, which often depends on which sovereign is the first to attain jurisdiction. Here, primary jurisdiction over Ruiz-Irias was with the State of Texas.  The Fifth Circuit in *Cibrian* wrote:

As one commentator explained it:
 The court that gains custody of a defendant first ... enjoys 'primary jurisdiction' over the defendant.  When a state court with primary jurisdiction has custody of a defendant, a federal court may "borrow" the defendant from the state court on a writ of habeas corpus ad prosequendum.  At that point, the federal court has present custody of, but not primary jurisdiction over, the defendant. Consequently, the federal court lacks jurisdiction to interfere with a state sentence because the state acquires primary jurisdiction for trial, sentencing and

he was prejudiced because his federal and state sentence were consecutive, the constitution affords no right to have a state and federal sentence run concurrently. *United States v. Dovalina*, 711 F.2d 737, 739 (5th Cir. 1983). Nor is there a federal statute that provides a prisoner a right to a concurrent sentence. Generally, there is a presumption that the federal sentence will run consecutive to the state sentence absent the Court's intent to run the state and federal sentences concurrent. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").

Moreover, to the extent that Ruiz-Irias requests that his federal sentence be vacated and that he be resentenced on true information, such a request is properly construed as a motion to alter, or reduce his sentence. Under 18 U.S.C. § 3582(c), the Court may modify the sentence when (1) the Bureau of Prisons moves the court to modify the sentence for reasons outlined in § 3582(c)(1); (2) under Federal Rule of Criminal Procedure 35 on the government's motion due to substantial assistance or to correct a clerical mistake within seven days of the date the sentence was imposed; and (3) the guidelines under which the defendant was sentenced have been subsequently lowered, and a modification of sentence is consistent with the guidelines' policy statements. Because Ruiz-Irias has not asserted grounds for modification of his sentence under § 3582(c), there is no authority for the Court to alter or reduce his sentence under 18 U.S.C. §

---

incarceration....The state sentence is served first because the state has primary custody of the defendant...

*Cibrian*, at *5 footnote 5 (quoting from Erin E. Goffette, *Sovereignty in Sentencing: Concurrent and Consecutive Sentencing of a Defendant Subject to Simultaneous State and Federal Jursidiction*, 37 Val.U.L.Rev. 1035, 1055-56(2003).

3582(c).[5]

Ruiz-Irias' next contends that counsel was ineffective because counsel could have, and should have, independently verified the factual assertions in the PSR.  The record, however, supports the conclusion that no relief is available to Ruiz-Irias on the merits of his ineffective assistance of counsel claims.

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.  *Id.* at 687.  Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88.  The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable.  *Id*. at 694-95.  Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief.  The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong.  *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate

---

[5] Ruiz-Irias could also challenge the Bureau of Prison's computation of his sentence.  Any challenge to the Bureau of Prison's computation of a sentence should be filed as a motion pursuant to 28 U.S.C. § 2241 in the district where the movant is incarcerated, after exhausting administrative remedies.  *See United States v. Wilson*, 503 U.S. 329, 335 (1992) (the law requires that a defendant exhaust available administrative remedies through the Bureau of Prisons before litigating in federal court the matter of computation of sentence).

assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland,* 466 U.S. at 689). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). The court's role "under § 2255 is not to audit decisions that are within the bounds of professional prudence." *United States v. Molina-Uribe*, 429 F.3d. 514, 518 (5th Cir. 2005), *cert. denied*, 547 U.S. 1041(2006). In addition, conclusory allegations of ineffective assistance of counsel do not raise a constitutional

16

question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

With respect to Ruiz-Irias' contention that counsel could have, and should have, investigated the accuracy of the PSR, and had this been done, counsel would have discovered the inaccuracy in the report, and would then have pursued all available options including but not limited to resolving the state charges before the federal sentence was imposed or in the alternative, requested that Ruiz-Irias' federal sentence run concurrent to the state sentence, upon this record, Ruiz-Irias has not shown there was any suggestion that would have alerted counsel of the need to question the accuracy of the PSR, nor has there been any showing that the erroneous information affected the calculation of his sentence or that even if counsel had discovered the error, that his sentence would have been ordered to run concurrent to his state sentence.  As such, Ruiz-Irias has not shown that any alleged error prejudiced him within the meaning of *Strickland.*

In conclusion, Ruiz-Irias has offered no proof as to how counsel's performance was objectively deficient, and no proof that such deficient performance prejudiced him in any way. *See Strickland,* 466 U.S. at 687. Therefore, no relief is available under § 2255 on the ineffective assistance of counsel claims.

**II. Conclusion and Recommendation**

Based on the foregoing, and the conclusion that Ruiz-Irias is not entitled to relief on his claims, it is

RECOMMENDED that Movant Jorge Alberto Ruiz-Irias' § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.  39-1) be DENIED.  It is further

17

ORDERED that Movant's Motion to Appoint Counsel (Document No.  39-2) is DENIED, and the Government's Motion to Supplement the Record (Document No.  45-2) is GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 11th day of June, 2010.

Frances H. Stacy
United States Magistrate Judge

18